IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TRENT YOUNG, M18059, )
  )
      Plaintiff, )
  )
vs. ) Case No. 17−cv−419−MJR
  )
JACQUELINE LASHBROOK, )
ROGERS, )
JANE DOE, )
M. SCOTT, )
C/O REID, )
LT. BAKER, )
FERRARI, )
CHRISTINE BROWN, and )
MARK HALE, )
  )
      Defendants. )

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Trent Young, an inmate a Pinckneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In his Complaint, Plaintiff claims the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. (Doc. 1). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

>  (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>  (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>     (2) seeks monetary relief from a defendant who is immune

1

from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to allow this case to proceed past the threshold stage.

## **The Complaint**

In his Complaint (Doc. 1), Plaintiff makes the following allegations: on December 12, 2016, Plaintiff "awoke to an extreme pain in [his] left leg." (Doc. 1, p. 7). Upon inspection, Plaintiff noticed an "extreme odor" coming from his left "leg along with yellow/green puss oozing from the leg in question." *Id.* Plaintiff notified a cell house worker, who alerted C/O Reid of the situation. *Id.* When Reid arrived, Plaintiff explained to him that he had "extreme pain in [his] left leg, . . . blood, puss and an extremely horrible smell of decay coming from [his] leg, [his] leg was extremely swollen, [and] . . . that [he has] a bullet in [his] left leg." *Id.* Reid entered Plaintiff's cell to inspect his leg, and told Plaintiff that his medical issue was not an emergency. *Id.* Plaintiff questioned whether Reid was qualified to make that decision and requested to be seen by a nurse. *Id.* Reid left, and when he returned, he claimed to have spoken

with a nurse (who he calls Jane Doe)[1] and "this was the reason [Plaintiff] was given to why [his] emergency did not get addressed." *Id.* Plaintiff then asked for a "white shirt" but was told that he would "have to talk to one on the walk" to chow. *Id.* Later, Plaintiff walked to chow and explained his situation to Lt. Baker and showed him his leg. *Id.* Baker also responded that it was not an emergency and told Plaintiff he could go to chow or go to segregation. *Id.*

The next day, Plaintiff was called to sick call and was charged five dollars to see a nurse. *Id.* The nurse asked Plaintiff if he was in pain, and he responded that his left leg was. *Id.* The leg was also "still visibly swollen as stated by the nurse." *Id.* Plaintiff was given generic pain reliever and was put in to see the doctor. *Id.* Plaintiff also asked a nurse (who he calls Jane Doe) what constituted a medical emergency, to which she replied "you either fall out or having trouble breathing." *Id.* Plaintiff was given a health care pass to see Dr. Scott, who noticed the swelling in Plaintiff's left leg and commented that it was infected. *Id.* Scott prescribed Plaintiff oral antibiotics and antibiotic ointment. *Id.*

On January 19, 2017, Plaintiff again arose to a great deal of pain. *Id.* He limped out of his room to the deck and informed C/O Reeding about his leg and that it was oozing puss and "hurt[ing] really bad again." *Id.* Reeding called Health Care and told Plaintiff he was on emergency nurse sick call. *Id.* Plaintiff was called to see Nurse Rogers, and he informed her of his past infection and told her he was in a lot of pain and that his left leg hurt, specifically when he walked. *Id.* Rogers examined Plaintiff's leg and noticed that it was swollen and oozing again. *Id.* Rogers told Plaintiff that she would put him in to see Dr. Scott. *Id.* Rogers did not give Plaintiff pain medication. *Id.* Over the next three days, Plaintiff put in nurse sick call slips. On January 27, 2017, Plaintiff told C/O T-Golly that his left leg still hurt. *Id.* T-Golly told

---

[1] In an apparent effort to identify this Jane Doe, Plaintiff notes that she is a nurse who worked the 7-3pm shift in 3 House B-Wing on December 12, 2016. (Doc. 1, p. 7).

Plaintiff there was nothing he could do about the issue. *Id.* Plaintiff was called to nurse sick call to see Nurse Long (who Plaintiff also calls Jane Doe) on January 22, 2017. *Id.* Plaintiff informed her of the pain, and she gave Plaintiff Tylenol and asked when he last saw the doctor and whether he followed up, noting that doctors are supposed to follow up on all infections. *Id.* Plaintiff responded that Dr. Scott had not followed up. *Id.*

On January 24, 2017, Plaintiff received a call pass to see NP Rector, but the appointment was cancelled. (Doc. 1, p. 8). On January 26, 2017, Plaintiff received a call pass to see Dr. Scott, but that appointment was also cancelled. *Id.* On January 29, 2017, Plaintiff dropped another request slip to see the nurse because his left leg was still oozing and Plaintiff had gone nearly two weeks without seeing the doctor. *Id.* The night nurse (who Plaintiff calls Jane Doe) told Plaintiff that NP Rector was on vacation, the doctor had been out, and there was no one to fill in. *Id.* On January 30, 2017, a nurse (who Plaintiff calls Jane Doe) came to Plaintiff's cell and told him that she would put him in to see the doctor. *Id.* She did not look at Plaintiff's leg or provide him with pain medication. *Id.* On February 3, 2017, Plaintiff had an appointment with Dr. Scott. *Id.* Plaintiff told Scott that his left leg was oozing and draining off and on for the past two weeks. *Id.* Scott looked at Plaintiff and said that it looked like it healed itself. *Id.* Plaintiff responded that he thought the antibiotics he was given did not work because the infection came right back. *Id.* Scott told Plaintiff that jail was not for him and that he was fine and did not need anything else. *Id.* Plaintiff responded that the last time he had these symptoms his leg was infected, but Scott stated there was no more he could do and asked the C/O to bring in the next patient. *Id.* Before Plaintiff let, Scott asked Plaintiff: "[I]f I prescribed you antibiotics would you sell them or get high off them?" *Id.* Plaintiff did not respond. *Id.*

On February 22, 2017, Plaintiff was called to nurse sick call and was seen by Nurse

Ferrari. *Id.* He told her that his left leg was in a lot of pain and at night it felt like his bone hurt. *Id.* She gave Plaintiff Tylenol, triple antibiotic ointment, and band aids. *Id.* She also told Plaintiff that she could not put him in for the doctor because there was no doctor. *Id.*

Plaintiff claims he suffered injuries as a result of the defendants' actions, which were "undertaken with intent or knowledge that there was a high probability that the conduct would inflict severe emotional distress and with reckless disregard of the probability" and "were undertaken intentionally with malice or with reckless indifference to the rights of the plaintiff." (Doc. 1, p. 9). The injuries Plaintiff allegedly sustained included pain and suffering and emotional distress. *Id.* Plaintiff seeks monetary damages from the defendants. (Doc. 1, p. 10).

## Discussion

Before analyzing Plaintiff's allegations, the Court finds it appropriate to address Plaintiff's failure to include specific allegations against Defendants Christine Brown, Jacqueline Lashbrook, and Mark Hale in the body of his Complaint, despite his having listed them among the defendants. Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2). Where a plaintiff has not included a defendant in his statement of claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him. Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). And in the case of those defendants in supervisory positions, the doctrine of *respondeat superior* is not applicable to § 1983 actions. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted).

5

Plaintiff has not alleged that Brown, Lashbrook, or Hale is "personally responsible for the deprivation of a constitutional right," and a defendant cannot be liable merely because he or she supervised a person who caused a constitutional violation. *Id.* Accordingly, Brown, Lashbrook, and Hale will be dismissed from this action without prejudice. Further, any individual that Plaintiff has not included in the case caption or list of defendants in the Complaint will not be considered a defendant in this action, despite Plaintiff's inclusion of him or her in his statement of claim. *See Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (for an individual to be considered a party, he must be specified in the caption).

Plaintiff has included two Jane Does in his list of defendants and noted that they are both nurses at Pinckneyville. Under Rule 8, and *Myles*, this is problematic, as Plaintiff seemingly recounts the actions of 5 separate "Jane Doe" nurses in his statement of claim, and this Court cannot ascertain which Jane Doe nurses in his statement of claim are the two Jane Doe nurses he has included as defendants in his defendants list. Rule 8 and *Myles* therefore run against the inclusion of these five Jane Does, as the three who are not included in the list of defendants will not be considered defendants per *Myles*, and the two who are in the list of defendants have not been sufficiently and clearly associated with specific claims, as is required by Rule 8. The Jane Doe defendants will therefore be dismissed without prejudice from this action.

Looking to the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into 2 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

**Count 1 –** Defendants showed deliberate indifference to Plaintiff's serious medical needs involving an infection in his leg and pain associated therewith by failing to provide him with effective and timely medical treatment in violation of the Eighth Amendment.

6

**Count 2 –** Defendants intentionally inflicted emotion distress upon Plaintiff when they failed to provide effective and timely treatment of the infection in his leg and the pain associated therewith.

As discussed in more detail below, Counts 1 and 2 will be allowed to proceed past threshold against some of the defendants. Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.

### **Count 1 – Deliberate Indifference to Medical Needs**

A prisoner raising a claim for deliberate indifference to the prisoner's serious medical needs must satisfy two requirements. The first requirement compels the prisoner to satisfy an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious[.]'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The Seventh Circuit considers the following to be indications of a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain;" (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (3) "presence of a medical condition that significantly affects an individual's daily activities;" or (4) "the existence of chronic and substantial pain." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997).

The second requirement involves a subjective standard: "[A] prison official must have a 'sufficiently culpable state of mind,'" one that amounts to "'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 297). Liability under the deliberate-indifference standard requires more than negligence, gross negligence or even recklessness; rather, it is satisfied only by conduct that approaches intentional wrongdoing, *i.e.*, "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm

will result." *Farmer*, 511 U.S. at 835.

Plaintiff has described an adequately serious condition with respect to his recurring leg infection, and the pain and suffering he has endured from it, to meet the objective prong of the medical indifference standard. *See Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (holding that pain and risk of infection are objectively serious medical conditions). With respect to the subjective prong, Plaintiff alleges that both Reid and Baker refused to take any action to help Plaintiff get care for his leg, despite the apparent severity of the infection given the puss and smell. Plaintiff also alleges that Rogers examined his leg when the puss and swelling returned, but failed to give him pain medication, and though she told him she would put him in to see a doctor, he did not get a follow up appointment with Scott until he had suffered with his infection for almost two weeks. With respect to Scott, while it appears he treated Plaintiff's infection the first time Plaintiff brought it to his attention, Plaintiff alleges that he refused to treat it when the infection seemed to return and instead told Plaintiff there was nothing he could do about it. At this early stage, these allegations against Reid, Baker, Rogers, and Scott satisfy the subjective component of the deliberate indifference standard.

With respect to Ferrari, Plaintiff claims that she provided him with antibiotic ointment, band aids, and Tylenol when he told her the pain had returned. Though she told him that she could not put him in to see a doctor because there was not one available, Plaintiff does not allege that this was her fault. The care Ferrari provided Plaintiff does not appear to rise to the level of deliberate indifference, far from it, so Count 1 will not be allowed to proceed as against her.

Given the foregoing, Count 1 will be allowed to proceed against Reid, Baker, Rogers, and Scott. It will be dismissed without prejudice as against Ferrari and all other defendants.

### **Count 2 – Intentional Infliction of Emotional Distress**

Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)).

Plaintiff has brought a claim of intentional infliction of emotional distress against the defendants. Under Illinois law, the tort of intentional infliction of emotional distress covers only acts that are truly "outrageous," that is, an "'unwarranted intrusion . . . calculated to cause severe emotional distress to a person of ordinary sensibilities.'" *Knierim v. Izzo*, 174 N.E.2d 157, 164 (Ill. 1961) (quoting *Slocum v. Food Fair Stores of Fla.*, 100 So. 2d 396 (Fla. 1958)). *See Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001). The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). To be actionable, the defendant's conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker*, 256 F.3d at 490 (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992); *Campbell v. A.C. Equip. Servs. Corp., Inc.*, 610 N.E.2d 745, 749 (Ill. App. 1993). Whether conduct is extreme and outrageous is judged on an objective standard, based on the facts of the particular case. *Honaker*, 256 F.3d at 490.

Here, Plaintiff's assertions are sufficient to state a claim for intentional infliction of emotional distress, at least at this stage, against Reid, Baker, Rogers, and Scott because it is

9

plausible that a prison official or medical care provider would know that depriving an inmate of needed care or medication could cause emotional distress. Unlike an ordinary citizen, a prisoner may be particularly susceptible to emotional distress based on the withholding of certain medical care because he has no other way to secure treatment for himself other than through internal medical staff. Thus, Count 2 will be allowed to proceed against Reid, Baker, Rogers, and Scott. By contrast, Count 2 will be dismissed without prejudice as to Ferrari because Plaintiff has not sufficiently established that she participated in the deprivation of medical care, so it is likewise untenable that she intended emotional distress by conduct that she may not have committed.

### Pending Motions

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 3), which is **REFERRED** to United States Magistrate Judge Stephen C. Williams for a decision.

Plaintiff's Motion for Service of Process at Government Expense (Doc. 4) is **DENIED** as moot. Waivers of service of summons will be issued and served on the remaining defendants as ordered below. Plaintiff is advised that it is not necessary for a litigant proceeding *in forma pauperis* to file a motion requesting service of process by the United States Marshal Service or other process server. The Clerk will issue summons and the Court will direct service for any Complaint that passes preliminary review.

### Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** shall **PROCEED** against **REID**, **BAKER**, **ROGERS**, and **SCOTT**. **COUNT 1** is **DISMISSED** as against all other defendants for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNT 2** shall **PROCEED** against **REID**, **BAKER**, **ROGERS**, and **SCOTT**. **COUNT 2** is **DISMISSED** as against all other defendants

for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **LASHBROOK**, **BROWN**, **HALE**, **FERRARI**, and **JANE DOE** are **DISMISSED** without prejudice from this action for failure to state a claim upon which relief may be granted.

With respect to **COUNTS 1** and **2**, the Clerk of the Court shall prepare for defendants **REID**, **BAKER**, **ROGERS**, and **SCOTT**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on defendants or counsel. Any paper received

by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Stephen C. Williams** for further pre-trial proceedings, including a decision on Plaintiff's Motion for Recruitment of Counsel (Doc. 3). Further, this entire matter shall be **REFERRED** to **United States Magistrate Judge Williams** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral*.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**
**DATED: 6/13/2017**

    s/MICHAEL J. REAGAN

**Chief Judge**
**United States District Court**